### UNITED STATES v. GEORGE BORGFELDT & CO.

#### (Circuit Court, D. Maryland. April 22, 1907.)

#### No. 34 (1,547).

CUSTOMS DUTIES—CLASSIFICATION—WOOLEN POWDER PUFFS—BRUSHES.

In Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 410, 30 Stat. 190 [U. S. Comp. St. 1901, p. 1673], the provision for "brushes" does not include so-called powder puffs, which are composed of flat circular pieces of woolen cloth with a fuzzy surface and are useful in applying toilet powder, and which, though resembling brushes in use, do not resemble them in construction.

[Ed. Note.—Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. United States, 18 C. C. A. 545.]

On Application for Review of a Decision of the Board of United States General Appraisers.

Appeal of the United States from the decision of the Board of United States General Appraisers, overruling the decision of the collector of customs at Baltimore with respect to the assessment of duty on an importation of powder puffs.

John C. Rose, U. S. Atty.

Robert G. Keegan, for importers.

MORRIS, District Judge. The merchandise consists of certain articles invoiced as powder puffs. They are simply flat circular pieces of white woolen fabric about one-half an inch thick and about three inches in diameter, useful for applying toilet powder to the face and neck. The duty was assessed by the collector at Baltimore upon the articles as a manufacture of wool, at the rate of 44 cents per pound and 55 per cent. ad valorem, under paragraph 366 of Act July 24, 1897, c. 11, § 1, Schedule K, 30 Stat. 184 [U. S. Comp. St. 1901, p. 1666]. The importer contends that the articles were brushes and under schedule N, paragraph 410, of the Act of July 24, 1897 (30 Stat. 190 [U. S. Comp. St. 1901, p. 1673]), liable only to 40 per cent. ad valorem.

Paragraph 410 reads:

"410 Brushes, brooms and feather dusters of all kinds and hair pencils in quills or otherwise 40% ad valorem."

It probably would not have occurred to any one to contend that these flat circular pieces of woolen fabric, precisely alike on both sides, are brushes, except that in previous cases certain powder puffs were held to be properly classified as brushes, and, as these imported articles are used as powder puffs, it is contended that they also should be so classified. The powder puffs originally held to be brushes had handles, and were made by sewing a bunch of swan's down to a circular piece of silk or cotton cloth, and affixing to that a small handle. That article had a handle, had a body to support the brush part, and had the swan's down to answer the place of the bristles or hair or fibers of other kinds commonly used in brushes, and they were used to apply powder to the face or to rub it off. It is obvious that these powder puffs were like "brushes" in construction and use. The articles now in question have none of these points of similitude to brushes, except their use. They are called powder puffs, and are useful in applying toilet powder to the skin; but so would be a towel, a handkerchief, a napkin, or a wash cloth, or any piece of woolen or cotton fabric, or a wad of cotton or wool. It seems to be a full description of the article now in question to say that it is a piece of woolen fabric which can be conveniently used for applying a toilet powder, and that is all the similitude it has to "brushes." The authority for the assimilation of powder puffs to "brushes" appears first in the letter of Assistant Secretary of the Treasury, French, to the collector at New York, dated November 28, 1876 (Synopsis of Decisions, Treasury Department 1876, T. D. 3,028, p. 362). In that case the imported articles were composed of swan's down, cotton, and metal, and were used for applying toilet powder to the face. The contention of the importer was that they were liable only to a duty of 35 per centum ad valorem, as manufactures of cotton and metal, while the contention of the collector was that they were dutiable at 40 per cent., under the provision placing that duty on "brushes of all kinds." The Assistant Secretary, while sustaining the ruling of the collector, wrote:

"In case, however, of an importation of so-called puffs composed in part of materials other than those above mentioned bearing a higher rate of duty, it

153 F.—31

would be proper, in order to give due effect to the law, to base the assimilation upon the materials of which the article is composed, rather than upon the use to which it is applied. You are therefore instructed upon any such importations to consider whether, and to what extent, this principle should govern the classification thereof, and if necessary apply to the department for specific instructions in the premises."

Another case that came up for a ruling was in 1877 (T. D. 3,114, p. 50). This was an appeal by the importer from an assessed duty of 60 per cent. ad valorem on certain powder puffs, instead of 40 per cent. The same Assistant Secretary wrote:

"It appears from the special report of the appraiser that the powder puffs in question are similar to those which were the subject of the department's decision of November 28, 1876 (T. D. 3,028), with the exception that they possess as a component material a small piece of scrap silk, which, however, does not give character to the goods, nor is it of sufficiently important a value to be considered in classifying them for duty. In view of these facts, the department decides that the appeal is well taken, and that the powder puffs are ·dutiable at the rate of 40 per cent. ad valorem, as brushes, under the decision above referred to."

Subsequently the same ·ruling was applied· to an instrument made of brass wire used for cleaning gun barrels, which was held dutiable as a brush, and not as a manufacture of metal, and in other cases to feather·dusters, a hair swab for applying remedies to the throat, bundles of fiber bound together by thin wooden strips, gloves made of hair used for rubbing the skin, an instrument for dampening the leaves of letter copy books, composed of a handle and pieces of rubber, instead of hair; all these have been held to be dutiable as "brushes." In many of these cases there has been expressed doubt. In 1892, with regard to powder puffs manufactured of down, the Board of General Appraisers said:

"The Board feels constrained to sustain the protest by reason of the long established practice of the Treasury Department with regard to the classification of powder puffs."

And they further said, speaking of powder puffs composed of down and other materials:

"We do not feel justified in reversing the long-established practice of the department with regard to these goods, although we doubt the correctness of these decisions, and might have reached a different conclusion if we were unembarrassed by them."

The powder puffs, which were composed of a little bit of down sewed to a cotton cloth, made into a puff shape by being stuffed with a little excelsior and covered with a small bit of satin, were quite a manufactured article; each component part separately having hardly an appreciable value, and the whole as put together being pretty and of value for the purpose for which it was manufactured. The articles now· under consideration are simplicity itself, being nothing more than two discs of a woolen fabric having one fuzzy and one plain surface, and sewed together with the plain surfaces back to back so as to present the fuzzy surfaces on both the outsides of the discs. Of this article the appraisers at the port of entry certified that, although invoiced as powder puffs, the article was in no sense a brush, but, being composed of wool, was dutiable under paragraph 366, and

the collector certified that they were an entirely different article from that held in T. D. 3,028 to be brushes. The Board of General Appraisers, in conformity to a previous decision, held that these articles, being powder puffs, were dutiable as brushes.

I am fully impressed with the justice and propriety in customs cases of adhering to an established practice of classification upon which importers have relied; but this case appears to be one in which a classification based, in the first instance, upon similarity of use has been step by step extended, until it is held to include the present importation, which, although in construction and material altogether different from the powder puffs which were held to be brushes, is held to be a brush, although it does not resemble either a powder puff or a brush, solely because it is useful for applying a toilet powder and is invoiced as a powder puff by an importer of brushes. It seems to be too wide a departure from the meaning of the words "brushes of all kinds" to hold that Congress contemplated that these discs of woolen fabric might be classified as brushes.

I think the decision of the Board of General Appraisers should be reversed, and the decision of the collector at Baltimore should be sustained.